IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ALBANY DIVISION

JAMES M. MARTIN,

    Plaintiff,

VS.

KEVIN ROBERTS,

    Defendant.

CIVIL ACTION FILE
NO.  1:06-CV-63 (WLS)

**RECOMMENDATION**

    This is a section 1983 action brought by a State of Georgia prisoner who is proceeding *pro se*. Throughout the time period of his complaint he has been housed at Calhoun State Prison in Morgan, Georgia. His complaints are primarily that he has been and is being exposed to dangerous levels of environmental tobacco smoke ("ETS"), due to the failure of prison officials to properly enforce the Georgia Department of Corrections policy banning smoking inside of state prison buildings. He maintains that this exposure is a violation of his Eighth Amendment right against cruel and unusual punishment. He also complains evidently that prison officials are deliberately indifferent to his serious medical condition allegedly caused by the exposure to ETS. In actuality his medical complaints seem to be predicated upon his desire to be seen by an "outside"[1] specialist to determine the degree of damage allegedly sustained by his lungs, throat and heart due to ETS exposure.

    Some general observations about this case are appropriate given its extensive history in terms of documents filed since its inception in early 2006. Plaintiff's complaints regarding his

---

[1] Not a member of the prison medical staff.

exposure to ETS seem to run from calendar year 2002 to the present. However, plaintiff has named as the only defendant Kevin Roberts, who was employed as Warden at Calhoun State Prison from December 16, 2004 through June 30, 2006. (Doc. # 135-2, Roberts Aff. ¶ 2). Clearly then any of plaintiff's complaints which predate defendant Roberts' arrival as Warden at Calhoun State Prison on December 16, 2004 are not a part of this lawsuit. Similarly, any of plaintiff's complaints which continue after Roberts' departure as warden are not encompassed within this lawsuit.

Although plaintiff professes to have a college education (Doc. # 15, ¶ 10), he either is incapable of comprehending the court's directives or just ignores the directives that do not suit him. For example, during the pendency of this action plaintiff decided it to be a class action and submitted various irrelevant documents signed by other inmates who apparently wanted to be included in the class. Although he has been repeatedly instructed by the court that this matter has not been certified as a class action and further that it is plain error to let an unrepresented litigant represent the class, Oxendine v. Williams, 509 F. 2d 1405, 1407 (4th Cir. 1975), he continues to refer to himself and "the class." Plaintiff did this as recently as his response to defendant's motion for summary judgment (Doc. # 157).

Additionally, plaintiff has seemingly ignored this court's long standing rules and policies regarding discovery in *pro se* prisoner cases as set out in the order of April 26, 2006, (Doc. # 11). Defendant's answer was filed on June 16, 2006, (Doc. # 22). Thus the discovery period commenced around the middle of June and concluded around the middle of September of 2006. It appears to the court that the plaintiff served little if any discovery upon the defendant during the discovery period and he did not timely request an extension of time in which to conduct

additional discovery.  Instead he waited for several months after the close of discovery and started filing improper motions to compel in which he sought an order from the court requiring the defendant to participate in the "framing of discovery."  The court must admit that it is unsure of the meaning of this phrase.  If the plaintiff has not had the discovery he wants he has only himself to blame for his refusal to adhere to the court's directives regarding discovery.

In document # 113, as well as in certain other filings by the plaintiff he complains that Deputy Warden Morales, who is not a party to his action, directed Mr. Satterfield, also not a party herein, to make an appointment for plaintiff to be seen by "doctors outside" in October of 2007, and this has not yet been done.  Assuming without deciding for the purposes of this Report and Recommendation that this amounts to a violation of plaintiff's constitutional rights, all of this occurred after defendant Roberts was transferred from Calhoun State Prison, and is obviously something for which he may not be held responsible.

*Summary Judgment Standard*

In determining a summary judgment motion, the inferences drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party.  Welch v. Celotex Corp., 951 F.2d 1235 (11th Cir. 1992)(citing Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574 (1986). However, once the movant demonstrates the absence of a genuine issue of material fact, the nonmovant must "make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial."  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  When the nonmoving party has the burden of proof at trial, the moving party may carry its burden at summary judgment either by presenting evidence negating an essential element of the nonmoving party's claim, or by

pointing to specific portions of the record which demonstrate that the nonmoving party cannot meet its burden of proof at trial.  Clark v. Coats & Clark, Inc., 929 F.2d 604, 606-608 (11th Cir. 1991).

*Analysis and Discussion*

In his brief defendant advances multiple arguments which he offers as authority for granting his motion for summary judgment.  The first argument is that plaintiff's deliberate indifference to serious medical needs claim fails on the merits.  This is followed by a claim of qualified immunity and Eleventh Amendment immunity in the event that defendant is sued in his official capacity.  Defendant next argues that he may not be held liable on the grounds of *respondeat superior.*  Defendant also submits that plaintiff's claim is barred by the statute of limitations, and finally that is claim may be barred by the exhaustion of administrative remedies provisions of the Prison Litigation Reform Act ("PLRA").

Judicial economy is best served by addressing the argument put forth by the defendant which will most promptly resolve this matter.  As earlier stated herein the plaintiff elected to name defendant Roberts as the only defendant in this matter (Doc. # 1, part 5, complaint - page 1), who, as earlier stated was warden at Calhoun State Prison from December 16, 2004 through June 30, 2006.  As more fully set out below, a tedious review of the voluminous, rambling and oft times incoherent documents submitted by plaintiff has caused the undersigned to conclude that he has failed to exhaust his available administrative remedies as required by the PLRA prior to seeking relief in this court.

Section 42 U.S.C. 1997e(a) of the PLRA states that:

> No action shall be brought with respect to prison conditions under
> section 1983 of this title, or any other Federal law, by a prisoner

> confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

As shown by the affidavit of Remika Christian, grievance coordinator at Calhoun State Prison (Doc. # 135-9), plaintiff filed and appealed (thus completing the grievance process) three formal grievances regarding his alleged exposure to excessive second hand tobacco smoke. The dates of filing of each formal grievance were December 4, 2002, March 13, 2007, and August 13, 2007 (Doc. # 139-9, Christian aff. ¶ 8). The first formal grievance was filed two years before this defendant even became warden at Calhoun State Prison. Plaintiff was thus grieving matters or conditions as they allegedly existed prior to the commencement of defendant's "watch." Under these circumstances the 2002 grievance can not be seen as having exhausted plaintiff's available administrative remedies as to the period of time this defendant was the warden.

Plaintiff signed his complaint during February 2006, and mis-filed it in the United States District Court for the Northern District of Georgia. That court erroneously transferred this matter to the United States District Court for the Southern District of Georgia, which in turn transferred this matter to this court where it was docketed on April 25, 2006 (Doc. # 7). However, whether plaintiff's complaint is considered to have been filed in February 2006, or April 2006, is of no consequence as he filed no formal grievance regarding the subject matter of this lawsuit between December 16, 2004, and the commencement date of this action (Doc. # 139-9, Christian aff. ¶ 8). Plaintiff has made no evidentiary showing that creates a genuine factual issue as to whether he exhausted his administrative remedies for the period of time for which this defendant may be held accountable. The undersigned did locate some copies of informal grievances filed by plaintiff regarding the ETS issue but they were filed in 2008. He therefore has not exhausted. The formal grievances filed in March and August 2007, were clearly

filed after the commencement date of this action.  It is clear that exhaustion must occur prior to the commencement date of the lawsuit.  <u>Harris v. Garner</u>, 216 F.3d 970, 974 (11th Cir. 2000); <u>Miller v. Tanner</u>, 196 F3d. 1190, 1193 (11th Cir. 1999).

      Inasmuch as this recommendation is not merit based, it is further recommended that summary judgment be entered in favor of the defendant without prejudice.  Pursuant to 28 U.S.C. § 636(b)(1), the parties may file written objections to this recommendation with the Honorable W. Louis Sands, United States District Judge, WITHIN TEN (10) DAYS of receipt thereof.

      IT IS SO RECOMMENDED, this 20th day of November 2008.

                                                    */s/ Richard L. Hodge*
                                                  RICHARD L. HODGE
                                                  UNITED STATES MAGISTRATE JUDGE